# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE ORTIZ-MARTINEZ, *aka* Jose Antonio Arellano,<br><br>    Defendant. | No. CR04-4118-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO DISMISS** |

_____

     This matter is before the court on the Motion to Dismiss (Doc. No. 27) filed by the defendant Jose Ortiz-Martinez ("Ortiz"). (*See also* Doc. No. 37) The plaintiff (the "Government") has resisted the motion. (Doc. No. 32) Pursuant to the trial scheduling order filed December 30, 2004 (Doc. No. 14), motions to dismiss were assigned to the undersigned United States Magistrate Judge for review, and the issuance of a report and recommended disposition. Accordingly, the court held a hearing on the motion on March 3, 2005. Ortiz appeared at the hearing with his attorney, Robert Lengeling. Assistant U.S. Attorney John Lammers appeared on behalf of the Government.

     Ortiz offered the testimony of Task Force Officer Dane Wagner. The following exhibits were admitted into evidence: Gov't Ex. 1 -- DVD of a post-arrest interview with Ortiz by Task Force Officers (located in Clerk's file); Gov't Ex. 2 – court documents from Case No. FECR052863, Iowa District Court for Woodbury County, Iowa, in *State v. Ortiz-Martinez* (15 pages) (attached to Doc. No. 32); and Def. Ex. A – INS Notice of Reinstatement of deportation order re Ortiz, dated 12/15/2004 (1 page) (attached to Doc. No. 27).

The court finds the motion has been fully submitted and is ready for decision.

## *FACTUAL BACKGROUND*

Two events form the basis of Ortiz's motion. First, he initially claimed that he was frightened at the time of his arrest on November 10, 2004, and, as a result, he defecated in his pants. He claimed he was not allowed to clean himself up and was forced to participate in an interview with Task Force officers in his soiled clothing. This particular claim was withdrawn after Ortiz's attorney had the opportunity to review Gov't Ex. 1, a video recording of the interview with Ortiz. (*See* Doc. No. 37) The video clearly shows that after Ortiz was taken to the police station, his pockets were searched and then he was taken immediately to a bathroom and allowed to clean himself up. Later, close to the end of his interview with the officers, Ortiz mentioned that he had a change of clothes in his car, and officers retrieved the clean clothing and allowed him to change his clothes. The court finds no merit Ortiz's claim that he was forced to participate in an interview without being allowed to clean himself up.

Ortiz's second claim concerns his alleged belief, based on statements made by TFO Wagner, that he had been charged in federal court, and his claim that his rights were violated because he was not brought before a federal magistrate judge for initial appearance until December 30, 2004. The videotape of Ortiz's interview with the officers reveals that TFO Wagner stated the following at the beginning of his interview with Ortiz (TFO Sassman also was present):

TFO WAGNER: We're with the Task Force, okay, we're with the federal government, work for the DEA, all right, just so you have a good kind of background on us. All right, and we're over here because of the fact, obviously, because something went down this morning, all right?

2

| | |
|---|---|
| ORTIZ: | Uh-huh. |
| TFO WAGNER: | You understand English really well? |
| ORTIZ: | Uh, well (gestures) -- |
| TFO WAGNER: | Good enough? |
| ORTIZ: | Yeah. |
| TFO WAGNER: | Okay, if you have any questions about what I'm saying, ask me. |
| ORTIZ: | Uh-huh. |
| TFO WAGNER: | Okay? Just throw it out and say you don't understand and we'll go from there. Okay? |
| ORTIZ: | [Grunts assent.] |
| TFO WAGNER: | Why we're here is, obviously, shit went down this morning, okay? |
| ORTIZ: | Huh? |
| TFO WAGNER: | We're here because you're in trouble this morning. |
| ORTIZ: | Uh-huh. |
| TFO WAGNER: | All right? And we get called up because of the fact that you're in trouble, number one, -- |
| ORTIZ: | Uh-huh. |
| TFO WAGNER: | -- but we've got to give you an opportunity to make things right, to square things up. |
| ORTIZ: | What kind of opportunity? |
| TFO WAGNER: | Well, I'll get to that, and that's gonna be – that's gonna be on you. But before we get to that, before we get too far into it, let me read you your rights, okay? After I've read you your rights, you've got to make a decision as to whether you want to talk to us or not and all, and that's going to be all on you. And just, before you make any decisions and that, I want to make it clear to you that I'm going to give you an opportunity |

3

|              | to tell your story, but in the federal system, the way it works is you're -- you've got federal-level drug charges you're facing right now, okay? And the way the federal system works is through cooperation, the only – the only way that you're going to get your sentence looked at at all is through some type of cooperation with the Government, okay? So if you get X amount of years in federal prison for dealing drugs, you're going to do X amount of years, okay? If you cooperate with the Government, X amount of years can go down. Are you catching what I'm saying? |
|---|---|
| ORTIZ: | Yeah. |
| TFO WAGNER: | Okay. Let me read you your rights and then we'll talk some more about it, all right? |

(Gov't Ex. 1, time index 09:31:11 to 09:32:58)

TFO Wagner testified he was in error if he led Ortiz to believe federal charges already had been filed against him, or even would be filed against him. He stated he did not know where charges would be filed, or if they would be filed, against Ortiz.

Ortiz did not testify at the hearing, but his attorney argued Ortiz believed, based on TFO Wagner's statements, that he either was being charged or had been charged with a drug crime in federal court. He claims that because his arrest was federal in nature from the beginning, the provisions of Rule 5, Federal Rules of Criminal Procedure, should have been triggered and he should have been brought before a federal magistrate judge immediately. Instead, the evidence indicates the following chronology of events took place:

| 11/10/04 | Ortiz was arrested |
|---|---|
| 11/10/04 | Ortiz was charged by criminal complaint with violations of State law (*see* Gov't Ex. 2, p. 1) |
| 11/11/04 | Ortiz had an initial appearance in State court (*see id.*, p. 6) |

4

| | |
|---|---|
| 11/18/94 | A Trial Information was filed in Woodbury County, charging Ortiz with violations of State law (*see id.*, p. 7) |
| 12/03/04 | Ortiz signed a written arraignment and plea of not guilty to the State charges (*see id.*, pp. 9-10) |
| 12/09/04 | Ortiz was charged by Indictment with violations of federal law (*see* Doc. No. 1) |
| 12/10/04 | Ortiz was arraigned on the State charges in person in Woodbury County, and he asked for appointment of an attorney to represent him (*see id.*, p. 11) |
| 12/15/04 | INS filed a Notice of Intent/Decision to Reinstate Prior Order, evidencing its intent to reinstate a deportation order entered against Ortiz on 01/13/04 (*see* Gov't Ex. 3) |
| 12/29/04 | Woodbury County dismissed the State charges against Ortiz (*see* Gov't Ex. 2, p. 15) |
| 12/29/04 | Ortiz was transferred to federal custody |
| 12/30/04 | Ortiz appeared in federal court (*see* Doc. No. 13) |

Ortiz's attorney argues Ortiz was only charged in Iowa state court "to allow the Task Force more time to build a case." (Doc. No. 27-2, Brief, at 4) He claims Ortiz was arrested with the intent of charging him in federal court, and the 51-day delay from his arrest to the time of his initial appearance in federal court violated the Rule 5 requirement that he be brought before a federal magistrate judge "without unnecessary delay." Counsel further argues the delay has prejudiced his client in two ways. First, he claims the Task Force has had more time to build a case against his client. Second, he claims that while Ortiz was in State custody, Task Force officers made statements to

5

others that Ortiz was a cooperator. He claims those statements have placed Ortiz in fear for his personal safety and the safety of his family. (*See id.*, pp. 4-5)

At the hearing, TFO Wagner explained that members of the Tri-State Drug Task Force work on investigations involving illegal drug activities without regard for the potential jurisdiction – state or federal – in which any charges might be prosecuted. Similarly, when the officers make arrests as a result of their investigations, they generally do not know where the suspects will be charged, or even if they will be charged. Following an arrest, the officers write up a report and present it to the County Attorney in the county and state where the arrest occurs. They also may be asked to make a report to the United States Attorney's office. Otherwise, Task Force officers have no involvement whatsoever in the decision to charge someone, or in what jurisdiction. TFO Wagner stated he testifies in both state and federal courts, and he estimated that during the past year, 60% of the cases he has investigated have led to state charges and 40% have led to federal charges.

TFO Wagner further testified he did not interview any codefendants in the present case. He stated that he made a post-arrest report to the Woodbury County Attorney's office and he talked with an Assistant U.S. Attorney about the arrest, but after that time, he had no further involvement in Ortiz's case until after Ortiz's initial appearance in this court. The officer further testified he has not mentioned Ortiz's name to anyone else identifying him as a cooperator, and to his knowledge no other Task Force officer has mentioned Ortiz's name as a cooperator.

Case 5:04-cr-04118-MWB   Document 40   Filed 03/07/05   Page 6 of 9

## *DISCUSSION*

In arguing the 51-day delay between his arrest and his initial appearance in federal court warrants dismissal of the Indictment, Ortiz relies primarily on *Jarrett v. United States*, 423 F.2d 966, 971 (8th Cir. 1970). However, under these facts, *Jarrett* supports the Government's position. In somewhat analogous circumstances to those involving Ortiz, the defendant in *Jarrett* was arrested on June 5, 1956, on state charges, although his conduct also would have supported federal charges. Several days later, he was charged with violations of federal law, and he had an initial appearance in federal court on June 12, 1956. While he was in state custody, before the federal charges were filed, Jarrett made incriminating statements to federal investigators. In his *pro se* application for post-conviction relief, Jarrett argued his confession somehow was involuntary because at the time of his arrest, "he could have been arrested without a warrant for federal violations." 428 F.2d at 971.

The Eighth Circuit Court of Appeals characterized Jarrett's argument as one arising under Rule 5(a), Federal Rules of Criminal Procedure,[1] and the holdings of *McNabb v. United States*, 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943), and *Mallory v. United States*, 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957). The court found Jarrett's argument to be unavailing, holding as follows:

> Rule 5(a) "may be invoked only when an officer makes an arrest under federal law" or, perhaps, when there is evidence indicating that the arrest and detention by the state official were at the request of federal authorities or for the purpose of assisting them. "The rule has no application

---

[1] In its present form, Rule 5(a) provides, "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Fed. R. Crim. P. 5(a). Rule 5(c) permits the initial appearance to be before a state or local judicial officer when a federal magistrate judge is not reasonably available. Fed. R. Crim. P. 5(c).

7

> where, as here, it is clear that at the time the statement was made the person has been arrested by local authorities and is in their sole custody." *Tucker v. United States*, 375 F.2d 363, 370 (8th Cir. 1967), *cert. denied*, 389 U.S. 888, 88 S. Ct. 128, 19 L. Ed. 2d 189; *Young v. United States*, 344 F.2d 1006 (8th Cir. 1965), *cert. denied*, 382 U.S. 867, 86 S. Ct. 138, 15 L. Ed. 2d 105; *Chapman v. United States*, 397 F.2d 24, 26 (10th Cir. 1968). "A bare suspicion of a 'working arrangement'" is insufficient. *Young v. United States, supra*, 344 F.2d at 1010; *Tucker v. United States, supra*, 375 F.2d at 370.

*Jarrett*, 423 F.2d at 971. *See also United States v. Shahryar*, 719 F.2d 1522 (11th Cir. 1983) (starting date for speedy trial purposes "is the date that the defendant is delivered into federal custody. . . . [T]he federal government is not bound by the actions of state authorities[.]")

The court finds that if Ortiz believed he was being held on federal charges, that belief would have been reasonable. However, the court finds such a belief would not be relevant to a claim that the Indictment should be dismissed. Ortiz was in state custody until December 29, 2004, and Rule 5's requirement that he be brought before a federal magistrate judge "without delay" did not become applicable until that date.

The court further finds Ortiz has failed to show any prejudice that resulted from the delay between his indictment on federal charges on December 9, 2004, and his transfer to federal custody on December 29, 2004. He has failed to prove he suffered prejudice in terms of defending himself on these charges, or that federal officers placed his and his family's safety in jeopardy by making improper statements regarding his cooperation.

8

## *CONCLUSION*

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections to this Report and Recommendation as specified below, that Ortiz's motion to dismiss be **denied**.

Any party who objects to this report and recommendation must serve and file specific, written objections **by no later than March 14, 2005**. Any response to the objections must be served and filed **by March 18, 2005**.

**IT IS SO ORDERED.**

**DATED** this 7th day of March, 2005.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

9